2004 ND 139

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**George Frances DECOTEAU, Defendant and Appellant.**

**No. 20030271.**

Supreme Court of North Dakota.

June 30, 2004.

**804**

Cynthia Mae Feland, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Steven Balaban, Bismarck, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] George Decoteau appealed from an amended judgment of conviction for possession of marijuana with intent to deliver and possession of drug paraphernalia. We affirm, concluding the arresting officer had reasonable suspicion to stop Decoteau's vehicle.

### I

[¶ 2] On October 20, 2002, Officer Marks of the Bismarck Police Department recognized Decoteau driving a vehicle. Officer Marks had stopped Decoteau one week previously and during that stop learned Decoteau's license had been suspended. Officer Marks initiated a traffic stop of Decoteau's vehicle. He did not run a computer check on Decoteau's license status or observe any driving violations before stopping the vehicle.

[¶ 3] During the stop, Officer Marks asked Decoteau whether his license was still suspended, and Decoteau admitted it was. Officer Marks then ran a computer check to confirm Decoteau's suspended status, and arrested Decoteau for driving under suspension. A search incident to arrest produced marijuana, empty baggies, and a scale. Decoteau admitted he used the scale to weigh marijuana and that he occasionally sold marijuana. He also admitted the vehicle was uninsured. Decoteau was eventually charged with possession of marijuana with intent to deliver, possession of drug paraphernalia, driving under suspension, and driving without insurance.

[¶ 4] Decoteau moved to suppress all evidence resulting from the stop, arguing Officer Marks did not have a reasonable and articulable suspicion of criminal activity sufficient to support the stop. When the State failed to file a response to the motion, Decoteau filed a "Request for Default" seeking suppression of the evidence and dismissal of the charges. The State then immediately filed a response to the motion to suppress and requested a hearing.

[¶ 5] At the hearing on the motion to suppress, the State conceded its response to the suppression motion was two days late because the assistant states attorney had erroneously believed there was an additional three days to respond after service by mail. Decoteau's suppression motion had been served personally, not by mail. The trial court advised counsel that, as a sanction for the State's tardy response, the State would be bound by the facts as outlined in Decoteau's brief, but the State could submit a brief arguing the legal effect of those facts. The court also allowed the State to submit a brief challenging its holding limiting the facts to those in Decoteau's brief. Officer Marks was allowed to testify as an offer of proof in the event the court changed its mind about limiting the facts.

[¶ 6] The State filed a brief, arguing that the court had discretion to permit a late response to a suppression motion and that the officer had reasonable suspicion to

stop Decoteau's vehicle. On May 7, 2003, the trial court entered an order denying the motion to suppress, not on the merits, but because Decoteau had failed to file a factual affidavit in support of the motion. On May 28, 2003, Decoteau entered a conditional plea of guilty, reserving the right to appeal the denial of the motion to suppress. A sentencing hearing was held on September 5, 2003. Decoteau filed a notice of appeal on September 5, 2003. A criminal judgment was filed on September 12, 2003, and an amended criminal judgment was filed on October 2, 2003.

## II

[¶ 7] Decoteau's notice of appeal states the appeal is taken from the order denying his motion to suppress. An order denying a motion to suppress is not an appealable order under N.D.C.C. § 29-28-06. *State v. Guscette,* 2004 ND 71, ¶ 4, 678 N.W.2d 126; *State v. Klodt,* 298 N.W.2d 783 n. 1 (N.D.1980). After denial of the motion to suppress, Decoteau entered a conditional plea of guilty, with the trial court and the State acknowledging at the change of plea hearing that Decoteau was reserving the right to appeal the denial of the motion to suppress. A subsequent judgment and amended judgment consistent with the order denying the motion to suppress were entered. Under these circumstances, we will treat Decoteau's attempted appeal from the order denying the motion to suppress as an appeal from the subsequently entered consistent amended judgment. *See Guscette,* at ¶ 4; *State v. Keilen,* 2002 ND 133, ¶ 9, 649 N.W.2d 224; *Klodt,* at 783 n. 1.

## III

[¶ 8] Decoteau initially raises challenges to the procedure employed by the trial court in resolving the motion. He alleges the trial court erred in allowing the arresting officer to testify at the hearing after already determining the matter would be decided based upon the facts as outlined in Decoteau's brief and in basing its denial of the motion on Decoteau's failure to file a factual affidavit. We find it unnecessary to resolve these procedural issues because we conclude that, even if only the facts presented in Decoteau's brief in support of the motion to suppress are considered, the officer had a reasonable and articulable suspicion of unlawful activity sufficient to stop Decoteau's vehicle.

## IV

[¶ 9] Decoteau contends that, considering only the facts included in his brief to the trial court, Officer Marks did not have a reasonable suspicion of unlawful activity when he stopped Decoteau's vehicle.

[¶ 10] In his brief in support of the motion to suppress, Decoteau conceded that Officer Marks had stopped him one week earlier and that Officer Marks discovered that Decoteau's license was suspended at the time of the first stop. One week later Officer Marks recognized Decoteau driving his vehicle and stopped him without observing any other traffic violations or running a computer check to determine if Decoteau's license was still suspended. Thus, the issue presented is whether an officer may stop a vehicle on the basis of the officer's knowledge that the driver's license was suspended when stopped by the same officer one week earlier.

[¶ 11] In *State v. Corum,* 2003 ND 89, ¶ 10, 663 N.W.2d 151 (citations omitted), we outlined the standards employed when considering whether a vehicle stop was proper:

To stop a moving vehicle for investigative purposes, an officer must have a reasonable and articulable suspicion that

a law has been or is being violated. The reasonable suspicion standard is less stringent than probable cause. Although the concept of reasonable suspicion is not readily reduced to a neat set of legal rules, it does require more than a "mere hunch." In determining whether an investigative stop is valid, we employ an objective standard and look to the totality of the circumstances. Reasonable suspicion for a stop exists when a reasonable person in the officer's position would be justified by some objective manifestation to believe the defendant was, or was about to be, engaged in unlawful activity.

An officer may stop a vehicle if he has a reasonable suspicion that the driver's license is suspended. *See State v. Gregg*, 2000 ND 154, ¶¶ 27–28, 615 N.W.2d 515.

■ [¶ 12] Decoteau asserts the officer's knowledge that Decoteau's license was suspended a week earlier was insufficient to create a reasonable suspicion that his license was still suspended. Decoteau argues the officer in this case acted on a "mere hunch," and that the officer was required to verify Decoteau's suspended status through a computer check before stopping the vehicle.

■ [¶ 13] Decoteau's argument confuses reasonable suspicion to conduct an investigatory stop with probable cause for an arrest. If the officer recognizes the driver and a computer check verifies that the driver's license is suspended, the officer has more than a reasonable suspicion of unlawful activity; he has probable cause to arrest for the offense. *See State v. Mische*, 448 N.W.2d 412, 414–15 (N.D. 1989). Probabilities, not hard certainties, are used in determining reasonable suspicion. *Lapp v. North Dakota Dep't of Transp.*, 2001 ND 140, ¶ 13, 632 N.W.2d 419; *Kappel v. Director, North Dakota Dep't of Transp.*, 1999 ND 213, ¶ 10, 602

N.W.2d 718. When an officer observes a person driving a vehicle, and the driver's license was suspended when the officer stopped him one week earlier, it is far from a "mere hunch" to suspect the driver's license is still under suspension.

■ [¶ 14] The officer's suspicion is not rendered unreasonable merely because the driver's license may have been reinstated in the intervening week. The reasonable suspicion standard does not require an officer to rule out every possible innocent excuse for the behavior in question before stopping a vehicle for investigation. *Hanson v. Director, North Dakota Dep't of Transp.*, 2003 ND 175, ¶ 15, 671 N.W.2d 780; *Lapp*, 2001 ND 140, ¶ 13, 632 N.W.2d 419; *Kappel*, 1999 ND 213, ¶ 10, 602 N.W.2d 718. The fact that a driver's license was suspended when he was stopped by the officer one week earlier would justify a reasonable person in the officer's position to believe that the driver was engaged in unlawful activity when driving again one week later.

[¶ 15] Appellate courts in other jurisdictions have consistently held that an officer's knowledge that a driver's license was suspended at some relatively recent time is sufficient to create reasonable suspicion of unlawful activity and support an investigatory stop of the vehicle. *See United States v. Lutz*, 207 F.Supp.2d 1247, 1255 (D.Kan. 2002) (officer knew defendant's license had been suspended and defendant had a prior conviction for driving under suspension); *Stone v. State*, 856 So.2d 1109, 1112 (Fla. Dist.Ct.App.2003) (officer knew driver's license had been suspended four or five weeks prior to the current stop); *State v. Wade*, 673 So.2d 906, 907 (Fla.Dist.Ct.App. 1996) (officer had conducted a records check less than two weeks before the current stop which showed driver's license was suspended); *State v. Leyva*, 599 So.2d 691, 693 (Fla.Dist.Ct.App.1992) (officer had

four-to-five-week-old knowledge the driver's license was suspended); *State v. Carrs*, 568 So.2d 120, 121 (Fla.Dist.Ct.App. 1990) (officer had cited the driver for driving with an expired license within the past week); *State v. Harris*, 236 Ga.App. 525, 513 S.E.2d 1, 3–4 (1999) (officer learned a "few weeks" prior to the stop that the driver's license was suspended); *State v. Brown*, 733 So.2d 1282, 1287 (La.Ct.App. 1999) (officer had run a records check one day before the stop showing driver's license was suspended); *Commonwealth v. Deramo*, 436 Mass. 40, 762 N.E.2d 815, 817 (2002) (officer had learned two months earlier that driver's license was suspended); *State v. Duesterhoeft*, 311 N.W.2d 866, 867–68 (Minn.1981) (officer had learned one month earlier that driver's license was suspended); *City of St. Paul v. Vaughn*, 306 Minn. 337, 237 N.W.2d 365, 368–69 (1975) (officer had run a license check one month earlier showing suspected driver's license was suspended); *State v. Bue*, 985 S.W.2d 386, 390 (Mo.Ct.App.1999), *overruled on other grounds by State v. Withrow*, 8 S.W.3d 75 (Mo.1999) (officer knew driver's license had previously been revoked and driver had driven without a valid license in the past); *State v. Yeargan*, 958 S.W.2d 626, 633 (Tenn.1997) (officer had learned six months earlier that driver's license had been suspended for one year); *State v. Gibson*, 665 P.2d 1302, 1304–05 (Utah 1983) (officer had learned four months earlier that driver's license was suspended); *State v. Howk*, 2004 WI App. 88, 679 N.W.2d 928 (Table) (officer had run a records check thirteen days earlier showing driver's license was revoked); *State v. Kassube*, 260 Wis.2d 876, 659 N.W.2d 499, 500–01 (2003) (officer knew driver had not had a license for many years, and driver had told officer within the prior eleven months that he did not have a license). We agree with the rationale of the Supreme Court of Minnesota that, in cases such as these, "[t]he stop was not the product of whim or caprice or desire on the part of the officer to harass the defendant," but "[r]ather, the officer believed that defendant's license was still under revocation." *Duesterhoeft*, at 868.

[¶ 16] We recognize that, at some point, the length of time which has passed may render knowledge of a prior suspension too stale to support a reasonable suspicion of unlawful activity. *See Moody v. State*, 842 So.2d 754, 757–58 (Fla.2003) (officer's knowledge that driver's license was suspended three years earlier was too stale to provide a basis for an investigatory stop); *Boyd v. State*, 758 So.2d 1032, 1035 (Miss.Ct.App.2000) (officer's knowledge that driver's license had been suspended eight years earlier was too stale to create a reasonable suspicion); *Commonwealth v. Stevenson*, 832 A.2d 1123, 1130–31 (Pa.Super.2003) (officer's knowledge that driver's license was suspended three years earlier was too stale to provide a basis for an investigatory stop). In this case, however, the officer's knowledge that Decoteau's driving privileges were suspended at the time of a prior stop only one week earlier was not stale and created a reasonable suspicion of unlawful activity.

## V

[¶ 17] We conclude Officer Marks had a reasonable and articulable suspicion of unlawful activity sufficient to justify an investigatory stop of Decoteau's vehicle, and therefore the trial court did not err in denying the motion to suppress. We have considered the remaining issues and arguments raises by the parties and they are either unnecessary to our decision or are without merit. The amended judgment of conviction is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.