2007 ND 160

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Rockwell D. SKARSGARD, Defendant and Appellant**

**City of Burlington, Plaintiff and Appellee**

v.

**Rockwell D. Skarsgard, Defendant and Appellant.**

Nos. 20060304, 20060305.

Supreme Court of North Dakota.

Oct. 16, 2007.

Mark Ashley Flagstad, Assistant State's Attorney and City Prosecutor, Minot, N.D., for plaintiffs and appellees, State of North Dakota and City of Burlington.

Mark Samuel Douglas, North Dakota Public Defenders' Office, Williston, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Rockwell D. Skarsgard appeals from criminal judgments entered on jury verdicts finding him guilty of driving under the influence of intoxicating liquor and driving under suspension. We conclude the stop of Skarsgard's vehicle was constitutionally permissible, the district court did not erroneously admit the results of Skarsgard's blood-alcohol test into evidence or erroneously fail to grant his motion for a mistrial, Skarsgard's excessive bail claim is moot, Skarsgard is not enti-

tled to reversal of the convictions based on the conditions of his pretrial incarceration, and the court did not abuse its discretion in sentencing him to one year in prison. We affirm.

## I

[¶ 2] At 2:39 p.m. on September 8, 2005, Burlington Police Chief Phillip K. Crabb received a call from Dodie Stevens, a United Community Bank employee, who told him a green Chrysler with no license plates had "suspiciously" driven through the bank's parking lot twice. She also told Crabb the driver looked intoxicated and the vehicle was westbound. Crabb responded to the call, spotted the moving vehicle, and drove behind it. Crabb stated in his report of the incident that he "noticed there were no plates of any sort or any type of registration on the vehicle" and he "personally recognized the driver as a suspended driver from a past call." After Crabb activated his emergency lights, the driver pulled the green Chrysler off the road into the parking lot of a car wash. When Crabb got out of his patrol car, the driver started to drive away. Crabb got back in his patrol car and followed the vehicle until it stopped in the parking lot. The driver started to drive off again when Crabb got out of the patrol car and he yelled to the driver to stop. The driver finally stopped the vehicle and Crabb confirmed through a concealed weapons permit that the driver was Skarsgard. Crabb detected a strong odor of alcohol on Skarsgard, informed him he was stopped for having no registration, and arrested him for driving under suspension. Skarsgard failed a field sobriety test and eventually agreed to submit to a blood-alcohol test which was administered at a Minot hospital. Skarsgard was arrested for driving under the influence.

[¶ 3] Skarsgard was incarcerated in the Ward County Jail but was released on bond pending trial. Shortly after his release, he was arrested for driving under the influence and driving under suspension. He was again released on bond, but was arrested on May 5, 2006, for driving under the influence and driving under suspension. Skarsgard posted bond, but was arrested on May 9, 2006, for actual physical control of a motor vehicle, driving under suspension, and disorderly conduct. The State's motion to revoke bond was granted by the court. Skarsgard requested a bond hearing, and the court set bond at $25,000 cash. Skarsgard's bond was posted by his girlfriend, and he was again released. However, on September 27, 2006, the district court revoked the bond at the request of the bond remittetur, who alleged that Skarsgard "has violated specific conditions of his release on bond, which were imposed by the Court."

[¶ 4] While incarcerated at the Ward County Jail, Skarsgard made numerous complaints to jail personnel and the court that the facility was not sufficient to accommodate his medical needs because of his cardiovascular, orthopaedic, and mobility problems. He was taken to a hospital emergency room on three occasions during his pretrial incarceration, and on each occasion, the attending physicians indicated Skarsgard was fit to be housed at the jail. After an evidentiary hearing, the district court denied his pretrial motion to suppress evidence. At his jury trial, Skarsgard objected to the admission of the blood-alcohol test results and moved for a mistrial based on witness statements about his refusal to take a field sobriety test during a subsequent driving under the influence arrest. The court admitted the test results and denied the mistrial motion, giving a cautionary instruction for the jury to disregard the statements of the witness. The jury found Skarsgard guilty, and the

court sentenced him to one year in prison on the driving under the influence charge and to 30 days imprisonment on the driving under suspension charge, both sentences to run concurrently.

## II

[¶ 5] Skarsgard argues the district court erred in denying his suppression motion because Crabb lacked probable cause to stop his vehicle.

[¶ 6] Although an evidentiary hearing was held on the motion to suppress, Skarsgard failed to provide this Court with a transcript of that hearing. A party's failure to provide a transcript of the proceedings in the district court may prevent the party from prevailing on appeal. *State v. Roth*, 2004 ND 23, ¶ 27, 674 N.W.2d 495. We will not review an issue if the record on appeal does not allow for a meaningful and intelligent review of the district court's alleged error. *State v. Hilgers*, 2004 ND 160, ¶ 35, 685 N.W.2d 109. However, the record on appeal, including the exhibits and trial transcript, allow for a meaningful and intelligent review of the district court's decision. We will affirm a district court's decision on a suppression motion if sufficient competent evidence exists that is fairly capable of supporting the findings and the court's decision is not against the manifest weight of the evidence. *State v. Doohen*, 2006 ND 239, ¶ 8, 724 N.W.2d 158. Questions of law are fully reviewable on appeal, and whether findings of fact meet a legal standard is a question of law. *State v. Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381.

[¶ 7] Although Skarsgard argues Crabb lacked probable cause to stop his vehicle, a law enforcement officer may make an investigative stop of a vehicle on less than probable cause. In *State v. Washington*, 2007 ND 138, ¶ 11, 737 N.W.2d 382, we explained:

> [I]nvestigative stops of automobiles and their occupants for suspected violations of law may be upheld if an officer has at least a reasonable suspicion that the motorist has violated the law or probable cause to believe the motorist has done so. *State v. Westmiller*, 2007 ND 52, ¶ 9, 730 N.W.2d 134. In *Westmiller*, at ¶ 10, we explained the minimum standard to justify a stop:
>
> > Reasonable suspicion requires more than a mere hunch. *State v. Smith*, 2005 ND 21, ¶ 15, 691 N.W.2d 203. Reasonable suspicion for a stop exists when a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential unlawful activity. *Johnson v. Sprynczynatyk*, 2006 ND 137, ¶ 9, 717 N.W.2d 586; *Smith*, at ¶ 15. The reasonable suspicion standard is objective and does not hinge upon the subjective beliefs or motivations of the arresting officer. *State v. Leher*, 2002 ND 171, ¶ 11, 653 N.W.2d 56. In order to determine whether an investigative stop is valid, we consider the totality of the circumstances and examine the information known to the officer at the time of the stop. *Gabel [v. North Dakota Dep't of Transp.]*, 2006 ND 178, ¶ 11, 720 N.W.2d 433; *State v. Torkelsen*, 2006 ND 152, ¶ 13, 718 N.W.2d 22. The reasonable suspicion standard does not require an officer to rule out every possible innocent excuse for the behavior in question before stopping a vehicle for investigation. *State v. Decoteau*, 2004 ND 139, ¶ 14, 681 N.W.2d 803.

*Washington*, at ¶ 11.

[¶ 8] Crabb testified that he stopped the green Chrysler because it had no license plates and "no viewable registration" sticker. Crabb also testified he was able to see the driver while following

him, recognized the driver as someone he had "dealt with ... approximately a month earlier," and "knew from a prior instance that he was under suspension." Skarsgard contends the investigative stop was unconstitutional because "it is not illegal to drive a vehicle without a registration sticker," and in any event, he presented evidence that he had a registration sticker affixed to a vehicle window. We reject Skarsgard's argument for several reasons. Even though N.D.C.C. § 39–04–17 does not specifically require that a registration certificate be affixed to a vehicle and be viewable, the statute does require that "possession" of a proper certificate "is prima facie evidence of compliance with motor vehicle law" for 30 days from the date of application, and a violation of the statute is punishable as an infraction. "Probabilities, not hard certainties, are used in determining reasonable suspicion." *State v. Decoteau*, 2004 ND 139, ¶ 13, 681 N.W.2d 803. When a law enforcement officer observes a vehicle with no license plates and no viewable registration certificate, the officer has reasonable grounds to stop the driver and check if the driver has a valid certificate in his possession. *Compare State v. Oliver*, 2006 ND 241, ¶ 7, 724 N.W.2d 114 (law enforcement officer's observation of vehicle with no license plates and a "faded temporary registration certificate with no visible printing was indicative of a temporary certificate that was more than thirty days old and constituted an objective fact giving the officer a right to stop Oliver to check its validity"). Furthermore, although Skarsgard's girlfriend presented evidence attempting to establish the vehicle had a registration sticker on its window when Skarsgard was stopped, the district court had the opportunity to observe the witnesses and assess their credibility. *Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381. Moreover, "an officer's knowledge that a driver's license was suspended at

some relatively recent time is sufficient to create reasonable suspicion of unlawful activity and support an investigatory stop of the vehicle." *Decoteau*, at ¶ 15. Crabb's knowledge of the prior suspension one month earlier was not too stale to support a reasonable suspicion of unlawful activity. *Id.* at ¶ 16.

[¶ 9] On this record, we conclude Crabb had reasonable suspicion to stop Skarsgard's vehicle, leading to his arrest for driving under suspension and driving under the influence of intoxicating liquor. The district court did not err in denying the suppression motion.

### III

[¶ 10] Skarsgard argues the results of his blood-alcohol test were erroneously admitted in evidence. Skarsgard objected to admission of the test results, arguing the approved procedures were not followed in obtaining the blood-alcohol test because the box on Form 104 stating "Drew Blood Into Tube and Inverted Several Times" was left unchecked and because "Time Not on Vact Tube" was written in the "Remarks" section of the form.

[¶ 11] In *State v. Friedt*, 2007 ND 108, ¶¶ 9–10, 735 N.W.2d 848, we discussed the foundational requirements for evidentiary use of blood analysis results:

Under N.D.C.C. § 39–20–07(5), blood analysis results must be received in evidence when compliance with the methods approved by the state toxicologist have been shown. First, the blood sample must be properly obtained; second, the blood analysis must be fairly administered; third, the method and devices used to analyze the blood must be approved by the state toxicologist; and fourth, the blood analysis must be performed by an authorized individual or by an individual certified by the state toxi-

cologist as qualified to perform the test. *Id.*

Form 104 was drafted by the state toxicologist to be used when blood is drawn for blood analysis. *State v. Steier*, 515 N.W.2d 195, 196 (N.D.App.1994). In [*State v.*] *Jordheim*, 508 N.W.2d [878,] 881 [(N.D.1993)], this Court reviewed the use of Form 104 to satisfy the foundational elements of N.D.C.C. § 39–20–07(5).

> Form 104 has three sections that correspond to the conduct of the three people who normally participate in administering the blood test. The top half of the form includes the name of the person whose blood is drawn, and a list of directions for both the specimen collector and the recipient of the sample at the laboratory. The bottom half of the form contains a similar list for the specimen submitter. The submitter, who will usually be a police officer, is directed to retain this half of Form 104 in police records, undoubtedly for later evidentiary use.

[*Jordheim*,] at 881–82.

*Friedt*, at ¶¶ 9–10. An adequate foundation for admission of blood-alcohol test results may be established by the testimony of witnesses. *See, e.g., Friedt*, at ¶ 10; *City of Grand Forks v. Scialdone*, 2005 ND 24, ¶ 9, 691 N.W.2d 198.

[¶ 12] In this case, the State presented the testimony of Brett Fried, the blood specimen collector, and Margaret Pearson, the State Toxicologist, explaining the ambiguity on Form 104 regarding the vacutainer tube, which "is a sealed tube used to store and preserve a blood sample until it can be analyzed by the State Toxicologist." *Bieber v. North Dakota Dep't of Transp. Dir.*, 509 N.W.2d 64, 67 (N.D. 1993). Fried testified his failure to check the box on Form 104 was an "oversight" and, to his best recollection, he did invert the tube several times after taking the blood sample because "in every blood draw we invert the tubes." Crabb testified he was present when Fried drew Skarsgard's blood sample and saw Fried "shaking the blood tube up." Pearson testified that although she wrote in the "Remarks" section of Form 104 the time was not noted on the vacutainer tube, the time the specimen was drawn was nevertheless written on the form. She testified the failure to include the time on the tube in addition to the form would not affect the results of the analysis. She further testified she believed the vacutainer tube had been inverted in accordance with her instructions because the blood in the tube was not coagulated.

[¶ 13] We conclude this testimony established Skarsgard's blood was properly obtained and laid the foundation for admission of Form 104. The district court did not err in admitting the blood-alcohol test results in evidence.

## IV

[¶ 14] Skarsgard argues the district court erred in refusing to grant a mistrial when Crabb mentioned one of Skarsgard's subsequent driving under the influence offenses during his testimony.

[¶ 15] During questioning about Skarsgard's September 8, 2005, arrest, Crabb testified:

> Q. Did you ask him if he would submit to a blood test?
>
> A. Yes, sir, I did.
>
> Q. Did he agree?
>
> A. No, sir, he refused.
>
> Q. He refused to take a blood test?
>
> A. Sorry, that was the second DUI. This one he did—he agree [sic] to take a test, sorry.
>
> Q. Okay.

Skarsgard's attorney objected and moved for a mistrial alleging prejudice. After a conference out of the presence of the jury, the court denied the mistrial motion and gave the jury a curative instruction:

> Members of the jury, there was just a question and answer through the state and the witness, that the—and the witness testified basically not responsive to that particular question. And the last answer is stricken. And I am going to ask Mr. Flagstad to reword his questions, and we will start over again. So, you are to disregard the previous answer—the last answer of the officer, and it is stricken from the record.

[¶ 16] Motions for mistrial are within the broad discretion of the district court, and we will not reverse the court's decision on the motion unless there was a clear abuse of that discretion or a manifest injustice would result. *State v. Paulson*, 477 N.W.2d 208, 210 (N.D.1991). A district court abuses its discretion when it misinterprets or misapplies the law, or when it acts in an arbitrary, unreasonable, or capricious manner. *State v. Frohlich*, 2007 ND 45, ¶ 11, 729 N.W.2d 148. "Generally, granting a mistrial is 'an extreme remedy which should be resorted to only when there is a fundamental defect or occurrence in the proceedings of the trial which makes it evident that further proceedings would be productive of manifest injustice.'" *State v. Klose*, 2003 ND 39, ¶ 14, 657 N.W.2d 276 (internal citation omitted). "A jury is generally presumed to follow instructions, and a curative instruction to disregard certain evidence is generally sufficient to remove improper prejudice." *State v. Hernandez*, 2005 ND 214, ¶ 24, 707 N.W.2d 449. Here, the court gave the jury a curative instruction. On this record, we cannot say the district court's failure to grant a mistrial resulted in manifest injustice. We conclude the district court did not abuse its discretion in refusing to grant Skarsgard's motion for a mistrial.

## V

[¶ 17] Skarsgard argues his pretrial bail in the amount of $25,000 cash was excessive.

[¶ 18] Excessive bail is prohibited by N.D. Const. art. I, § 11, and U.S. Const. Amend. VIII. Generally, pretrial bail issues are moot after conviction. *See State v. Hansen*, 2006 ND 139, ¶¶ 5–11, 717 N.W.2d 541; *see also Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982); *United States v. Hollister*, 746 F.2d 420, 426 n. 18 (8th Cir. 1984); *Bostick v. United States*, 400 F.2d 449, 451 (5th Cir.1968); *State v. Grillette*, 588 So.2d 1338, 1340 (La.Ct.App.1991); *State v. Huber*, 275 Minn. 475, 148 N.W.2d 137, 140 (1967); *Delangel v. State*, 132 S.W.3d 491, 494 (Tex.App.2004). Skarsgard does not claim the amount of bail prejudiced him in the preparation of his defense. *See McMorrow v. State*, 2003 ND 134, ¶ 9, 667 N.W.2d 577. We conclude this issue is moot and decline to address it.

## VI

[¶ 19] Skarsgard argues the charges should be dismissed because the Ward County Jail where he was held before trial was unable to "effectively meet his physical and medical needs" in violation of the cruel and unusual punishment clauses of the state and federal constitutions.

[¶ 20] Although Skarsgard frames his argument under N.D. Const. art. I, § 11, and the Eighth Amendment to the United States Constitution, his status as a pretrial detainee while at the Ward County Jail "placed him outside the protections of the Eighth Amendment pro-

scription against cruel and unusual punishment, which applies only to convicted prisoners." *Hott v. Hennepin County,* 260 F.3d 901, 905 (8th Cir.2001); *see also United Hosp. v. D'Annunzio,* 514 N.W.2d 681, 684 (N.D.1994); *Purcell ex rel. Estate of Morgan v. Toombs County,* 400 F.3d 1313, 1318 n. 13 (11th Cir.2005). Rather, pretrial detainees are protected under the Fourteenth Amendment Due Process Clause. *See D'Annunzio,* 514 N.W.2d at 684; *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Burrell v. Hampshire County,* 307 F.3d 1, 7 (1st Cir.2002). "However, the distinction is academic," *White v. Crow Ghost,* 456 F.Supp.2d 1096, 1101 (D.N.D.2006), because the due process rights of a pretrial detainee "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *see also D'Annuzio,* 514 N.W.2d at 684; *Owens v. Scott County Jail,* 328 F.3d 1026, 1027 (8th Cir.2003).

[¶ 21] Assuming for purposes of argument only that Skarsgard's allegations of deliberate indifference to serious medical needs rose to the magnitude of a constitutional violation, reversal of his convictions and release from confinement would not be the appropriate remedy. "If an inmate established that his medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for proper treatment, or to award him damages; release from custody is not an option." *Glaus v. Anderson,* 408 F.3d 382, 387 (7th Cir. 2005); *see also Gomez v. United States,* 899 F.2d 1124, 1126 (11th Cir.1990) ("relief of an Eighth Amendment violation does not include release from confinement"); *Cook v. Hanberry,* 596 F.2d 658, 660 (5th Cir.1979) ("appropriate remedy would be

to enjoin continuance of any practices or require correction of any conditions causing him cruel and unusual punishment"); *United States v. Crouch,* Nos. 03–20108–JWL, 06–3078–JWL, 2006 WL 1410005 *4 (D.Kan. May 22, 2006) (court could not vacate defendant's sentence based on his medical needs); *Burr v. Sherrer,* No. CIV. 05–3894 DMC, 2005 WL 2007026 *1 (D.N.J. Aug.22, 2005) ("Release is not a proper remedy for unconstitutional conditions of confinement"). Skarsgard nevertheless argues dismissal of the charges is warranted as a sanction under *City of Jamestown v. Erdelt,* 513 N.W.2d 82, 86 (N.D.1994), for "institutional non-compliance and systematic disregard of the law." *See also Madison v. North Dakota Dep't of Transp.,* 503 N.W.2d 243, 246–47 (N.D. 1993). *Erdelt* involved a city's illegal blanket policy of jailing for eight hours without bail all persons arrested for driving under the influence. This Court has said that "more than a 'single miscue' by the government is needed to evidence the institutional noncompliance that amounts to 'systemic disregard of law.'" *Greenwood v. Moore,* 545 N.W.2d 790, 793 (N.D.1996) (internal citation omitted).

[¶ 22] Skarsgard complained about the jail's concrete floors and its lack of handrails, shower seats, recliner, and hospital beds to accommodate his heart and arthritic conditions. He also complained about the lack of a private line to telephone the North Central Human Service Center, his physician, and his insurance company to confidentially discuss health related matters. He also requested support hose stockings and daily blood pressure checks. Many of Skarsgard's requests were accommodated by the jail staff. He was allowed access to his support hose and blood pressure checks upon request. Plastic chairs for the shower and extra mattresses for the bed were made available. He was taken to the emergency

room when he fell and physicians permitted his return to the jail. The jail commander testified that some prisoners in jail have been released for medical reasons, but Skarsgard's condition had not reached that level. Skarsgard does not claim inmates in general had their medical needs overlooked by jail staff. On these facts, we conclude Skarsgard has not established systemic disregard of the law.

[¶ 23] Skarsgard's argument he is entitled to dismissal of the charges because of the conditions of his pretrial confinement is without merit.

## VII

[¶ 24] Skarsgard argues the district court erred in sentencing him to the maximum penalty of one year of incarceration with the Department of Corrections for the driving under the influence conviction.

[¶ 25] "A district court [] is allowed the widest range of discretion in sentencing" a convicted defendant. *State v. Loughead*, 2007 ND 16, ¶ 14, 726 N.W.2d 859. "[A]ppellate review of the sentence itself focuses only on whether the district court 'acted within the limits prescribed by statute, or substantially relied on an impermissible factor.'" *State v. Wardner*, 2006 ND 256, ¶ 27, 725 N.W.2d 215 (internal citation omitted). Skarsgard was convicted of class A misdemeanor driving under the influence in violation N.D.C.C. § 39–08–01. The maximum penalty for a class A misdemeanor is "one year's imprisonment." N.D.C.C. § 12.1–32–01(5). The district court sentenced Skarsgard within the limits prescribed by statute and the record does not reflect the court relied on an impermissible sentencing factor. We conclude the court did not abuse its discretion.

## VIII

[¶ 26] The judgments are affirmed.

[¶ 27] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.