2008 ND 5

**CITY OF GRAND FORKS,**
Plaintiff and Appellee

v.

**Clinton Bernard MITCHELL,**
Defendant and Appellant.

No. 20070153.

Supreme Court of North Dakota.

Jan. 17, 2008.

Rehearing Denied Feb. 21, 2008.

Jay D. Knudson and Alexander F. Reichert (argued), Reichert Armstrong Law Office, Grand Forks, N.D., for defendant and appellant.

Tressie C. Brazil, (argued), Assistant City Prosecutor, and Kristen S. Pettit, City Prosecutor, Grand Forks, N.D., for plaintiff and appellee.

MARING, Justice.

[¶ 1] Clinton Mitchell appeals the district court's criminal judgments entered on a conditional plea of guilty after the district court denied his motion to suppress evidence obtained during a traffic stop on the basis that the stop of his vehicle was not justified by a reasonable and articulable suspicion he was violating motor vehicle registration laws. Mitchell's vehicle bore no license plates but did have a Montana temporary registration certificate printed on a white sheet of paper with an expiration date written in black marker posted in its rear window. We affirm because under the circumstances of this stop, the officer had reasonable and articulable suspicion of a violation of the motor vehicle registration law.

I

[¶ 2] Two Grand Forks police officers stopped Mitchell's vehicle on October 1, 2006. The district court found that the officers noticed the vehicle did not have license plates and observed a white sheet of paper in the vehicle's rear window. After stopping the vehicle, the officers noticed some writing on the paper, but it did not look like a North Dakota temporary registration certificate. The paper was a temporary registration certificate issued by the state of Montana on an 8½ × 11 sheet of paper with the expiration date written in black marker.

[¶ 3] The record reveals that, as one of the officers approached the driver's side of the vehicle, he noticed Mitchell smelled of alcohol and had bloodshot, watery eyes. The officer proceeded by reading Mitchell his Miranda warning and administering field sobriety tests, a breathalyzer test, and an Intoxilyzer test. Mitchell failed each of the tests. Mitchell's alcohol concentration was measured at .15. Mitchell was cited for driving under the influence, driving under suspension, and driving without liability insurance. Mitchell moved to suppress the evidence obtained during the traffic stop.

[¶ 4] The district court denied Mitchell's motion to suppress. The district court determined that the officers had reasonable and articulable suspicion to believe that a violation was occurring because they could not tell whether Mitchell displayed a

temporary registration certificate, and, if he did, whether the certificate was forged. The district court stated that the officer reasonably believed the paper was not a valid temporary registration because the driver could have created the certificate himself.

[¶ 5] Mitchell entered conditional pleas of guilty to the charges of driving under the influence, driving without liability insurance, and an amended charge of no license in possession pending appeal of his suppression motion. Mitchell appeals, requesting reversal of the district court's denial of his motion to suppress.

II

■ [¶ 6] After resolving conflicting evidence in favor of affirming a district court decision on a motion to suppress, we affirm the ·district court decision unless there is insufficient evidence to support the decision or the decision goes against the manifest weight of the evidence. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 6, 639 N.W.2d 478. We accord great deference to district court findings of fact in suppression matters. *Id.* Questions of law are, however, fully reviewable on appeal. *State v. Johnson*, 2006 ND 248, ¶ 5, 724 N.W.2d 129.

■ [¶ 7] The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." For purposes of the Fourth Amendment, seizures occur only when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. Automobile stops constitute "seizures" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Police offi-

cers may stop individuals for investigative purposes if a reasonable and articulable suspicion exists that criminal activity is afoot. *Anderson v. Director, Dept. of Transp.*, 2005 ND 97, ¶ 8, 696 N.W.2d 918. This standard is objective and based on the totality of the circumstances. *Johnson*, 2006 ND 248, ¶ 9, 724 N.W.2d 129.

■ [¶ 8] "An investigative stop of a moving vehicle must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, and mere curiosity, suspicion, vague hunches, or other non-objective facts will not suffice." *Salter v. N.D. Dept. of Transp.*, 505 N.W.2d 111, 114 (N.D. 1993). The United States Supreme Court has held that an officer's ulterior motive does not prohibit law enforcement officers from engaging in behavior that is objectively justifiable under the Fourth Amendment. *Whren*, 517 U.S. at 812, 116 S.Ct. 1769. As long as a traffic violation has occurred, a police officer's subjective intentions in making the stop will not render the stop constitutionally unreasonable. *Id.* at 813, 116 S.Ct. 1769. "'As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'" *State v. Oliver*, 2006 ND 241, ¶ 6, 724 N.W.2d 114 (quoting *Whren*, at 810, 116 S.Ct. 1769).

III

■ [¶ 9] Mitchell argues that the officers' stop of his vehicle was not supported by a reasonable and articulable suspicion criminal activity was afoot. The City argues that the district court's denial of Mitchell's motion to suppress was appropriate.

[¶ 10] Chapter 39–04, N.D.C.C., is North Dakota's motor vehicle registration law. Section 39–04–17, N.D.C.C., provides

that possession of a temporary registration certificate is prima facie evidence of compliance with ch. 39–04. In the last two years, we have examined three factually distinctive investigative stops of vehicles without license plates to determine whether law enforcement officers had reasonable and articulable suspicion the driver may have been violating N.D.C.C. ch. 39–04 to justify the stops. *See Oliver*, 2006 ND 241, 724 N.W.2d 114; *Johnson*, 2006 ND 248, 724 N.W.2d 129; *State v. Skarsgard*, 2007 ND 160, 739 N.W.2d 786.

[¶ 11] In the first of these cases, *State v. Oliver*, we upheld a district court denial of a defendant's motion to suppress evidence seized during a traffic stop. 2006 ND 241, 724 N.W.2d 114. The officer in *Oliver* stopped the defendant because the defendant's vehicle had no license plates in possible violation of state law. *Id.* at ¶ 3. A temporary registration certificate was on the rear window of the vehicle, but was faded. *Id.* We held that the "faded temporary registration certificate with no visible printing was indicative of a temporary certificate that was more than thirty days old and constituted an objective fact giving the officer a right to stop [the defendant] to check its validity." *Id.* at ¶ 7. The faded tag was an indication that a violation had been, and was, occurring. *See id.* at ¶ 9 (quoting *Kennedy v. State of Texas*, 847 S.W.2d 635, 636 (Tex.App.1993)).

[¶ 12] The second related decision is *State v. Johnson*, 2006 ND 248, 724 N.W.2d 129. In *Johnson*, a highway patrolman initiated a traffic stop of a vehicle that did not have license plates but did have a temporary registration certificate in the back window. *Id.* at ¶ 2. Unlike the faded registration certificate observed by the officer in *Oliver*, there was nothing unusual about the registration certificate in *Johnson*. *See id.* The officer in *Johnson* stopped the vehicle only because he believed many people drive vehicles with temporary registration certificates beyond the allowable thirty-day period. *Id.* We held that the officer's hunch that the defendant may have been in violation of a vehicle registration statute was not enough to authorize the stop. *Id.* at ¶ 8. We reversed the district court's denial of the defendant's motion to suppress. *Id.* at ¶ 13.

[¶ 13] Finally, we recently upheld a district court's denial of a motion to suppress in *State v. Skarsgard*, 2007 ND 160, 739 N.W.2d 786. In *Skarsgard*, an officer stopped a vehicle because it had no license plates or visible temporary registration certificate, and the officer recognized the driver as a suspended driver from a past call. *Id.* at ¶ 2. We held, "[w]hen a law enforcement officer observes a vehicle with no license plates and no viewable registration certificate, the officer has reasonable grounds to stop the driver and check if the driver has a valid certificate in his possession." *Id.* at ¶ 8.

[¶ 14] Mitchell maintains this case is more like *Johnson* than *Oliver*. He stresses that his registration certificate was not faded, and the expiration date on the certificate was written in large, readable print. The City maintains that, unlike the registration certificate in *Johnson*, the Montana-issued permit was unusual because it was an 8½ × 11 plain sheet of paper, while North Dakota permits are smaller, pre-printed forms.

[¶ 15] We hold that this 8½ × 11 sheet of paper in the rear window of Mitchell's vehicle, which was without license plates, provided reasonable and articulable suspicion that Mitchell was not complying with motor vehicle registration laws. This suspicion did not arise just because Mitchell's registration was from another state. This suspicion arose because a reasonable officer who sees a vehicle without license

plates and with an 8½ × 11 white sheet of paper in the rear window that the officer does not recognize as an authentic temporary registration certificate would have reasonable grounds to stop the driver and check if the driver has a valid temporary registration certificate in his possession in accordance with state law. An 8½ × 11 sheet of paper with a date written in black marker is objectively more akin to the faded registration certificate in *Oliver* than the certificate in *Johnson*, which the officer identified as a North Dakota certificate with no unusual characteristics. Although Mitchell's certificate was not faded, the form did not resemble any type of temporary registration with which the officer was familiar. The officer had reasonable grounds to further investigate whether the paper was a valid or fictitious registration certificate.

[¶ 16] Mitchell also argues the testimony of the officer that he stops each vehicle bearing a temporary permit to investigate the permit's validity means the officer's actions were a mere subterfuge. The officer's subjective intent, however, is not germane for purposes of the objective inquiry used to determine whether a reasonable and articulable suspicion existed that Mitchell was violating registration laws. We do not hold that an officer is justified in stopping every vehicle bearing a temporary registration certificate. However, in accordance with our previous decisions in *Johnson, Oliver,* and *Skarsgard,* we do hold this particular temporary registration certificate under these particular circumstances did give rise to a reasonable and articulable suspicion that Mitchell may have been in violation of registration laws, justifying the officers' investigatory stop of Mitchell's vehicle.

## IV

[¶ 17] Mitchell further argues that, even if the officers did have a reasonable and articulable suspicion to justify the initial stop, once the officers saw the date on the temporary registration certificate indicating it was a valid Montana temporary registration certificate, the reasonable and articulable suspicion that any criminal activity was afoot was dispelled, and the officers should not have made the further intrusion of approaching the driver's door to speak to Mitchell. The City argues that Mitchell did not properly raise this issue at the trial court level. The record establishes that this issue was not briefed for the district court proceeding and was not addressed by the district court. We have previously stated that we will not consider issues raised for the first time on appeal. *Bay v. State,* 2003 ND 183, ¶ 14, 672 N.W.2d 270.

## V

[¶ 18] We conclude that the unlicensed vehicle, with only the 8 ½ × 11 sheet of paper in the rear window, provided a reasonable and articulable suspicion to justify stopping the vehicle. We, therefore, affirm the district court's criminal judgments.

[¶ 19] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

SANDSTROM, Justice, concurring specially.

[¶ 20] I agree with the result reached by the majority opinion. I write separately to note apparently erroneous premises and dicta.

[¶ 21] There are two underlying premises of the appellant's argument on appeal:

1. The record establishes that appellant's vehicle displayed a valid Montana temporary registration certificate.

2. The appellant was entitled to operate his vehicle in North Dakota with a valid Montana temporary registration certificate.

Neither premise appears to be correct.

## I

[¶ 22] The record simply does not establish that the appellant was displaying a valid Montana temporary registration certificate. He was displaying what purported to be a Montana temporary registration certificate (actually, it apparently purported to be a "MONTANA TEMPORARY WINDOW STICKER" and "40 DAY PERMIT ONLY (1) PER VEHICLE SALE"). The appellant testified that he was displaying a Montana temporary registration certificate. The officer testified that it purported to be a Montana temporary registration certificate but that he doubted its authenticity. No competent, admissible evidence was presented that a temporary registration certificate had even been issued in Montana. *See* N.D.R.Ev. 902 and 1005.

## II

[¶ 23] The law does not establish that the appellant was entitled to operate his vehicle in North Dakota with a valid Montana temporary registration certificate.

[¶ 24] "Because the operation of a motor vehicle is a privilege, the legislature of each state may, in the exercise of the police power, enact reasonable regulations requiring the licensing or registration of motor vehicles...." 7A Am.Jur.2d *Automobiles and Highway Traffic* § 59 (1997) (footnotes omitted).

[¶ 25] "It is well settled that the police power of a state to regulate the use of motor vehicles on its highways extends to nonresidents as well as residents, and that a state may prohibit the use of its highways by a foreign motor vehicle unless and until it is licensed in accordance with state laws. While states may allow nonresidents to use vehicles in-state for limited periods of time without complying with their licensing or registration laws, but as a pure matter of state power, a state can stop a nonresident motorist at its boundaries and require him or her, as a condition of operating the motor vehicle on the highways of the state, to pay a reasonable license fee." 7A Am.Jur.2d *Automobiles and Highway Traffic* § 60 (1997) (footnotes omitted).

[¶ 26] For an indication of the general state of state laws, we may look at the National Committee on Uniform Traffic Laws and Ordinances, Uniform Vehicle Code, 2000 ("UVC"). Under UVC §§ 3–402, 1–120, 3–407, temporary permits are valid in a state only if issued by the motor vehicle department of that state. And under UVC § 3–403, a nonresident owner of any foreign vehicle may operate the vehicle in a state without registering in that state if a number of conditions are met, including "displays upon it a valid registration card *and registration plate or plates* issued for such vehicle in, the place of residence of such owner." (Emphasis added.)

[¶ 27] North Dakota law follows this pattern. Under N.D.C.C. § 39–04–11:

Except as otherwise specifically provided, a person may not operate or drive a vehicle on the public highways of this state unless the vehicle has a distinctive number assigned to it by the department, and two number plates, bearing the distinctive number conspicuously displayed, horizontally and in an upright position, one on the front and one on the rear of the vehicle, each securely fastened....

[¶ 28] Under N.D.C.C. § 39–04–18(2): "The following motor vehicles may be operated upon the highways, roads, and

streets of this state without being registered, under such limitations as are herein specified;" subject to further specified limitations:

   e. Passenger motor vehicles registered in any other state or territory; provided, however, that such motor vehicles have displayed thereon the *current license plates* issued by the state or territory in which they are registered and provided further that the owners or operators thereof are not residents of this state for any purpose and are not gainfully employed or stationed in this state.

(Emphasis added.)

[¶ 29] Thus, the specific statutes require "foreign" vehicles to display current license plates.

[¶ 30] The majority opinion appears to suggest that N.D.C.C. § 39–04–17, relating to temporary certificates, may apply here. It does not and cannot for several reasons. The specific provision of N.D.C.C. § 39–04–18 would apply over the general. And under the plain language of N.D.C.C. § 39–04–17, it applies only to North Dakota-issued certificates. Section 39–04–17, N.D.C.C., provides:

   The possession of a certificate made out by a notary public or an authorized agent of a licensed vehicle dealer who took the acknowledgment of the application when the vehicle was first registered or required to be registered under the laws of this state, where such certificate shows the date of application, the make, registered weight, and year model of the motor vehicle, the manufacturer's number of the motor vehicle which such application describes, and further shows that such notary public, or authorized agent of a vehicle dealer, personally mailed the application with the remittance fee, is prima facie evidence of compliance with motor vehicle law with reference to the vehicle therein described,

for a period of thirty days from the date of such application. Any violation of this section is an infraction punishable by a fine of not less than fifty dollars.

[¶ 31] By its terms, N.D.C.C. § 39–04–17 is limited to vehicles "registered or required to be registered under the laws of this state." Additionally, the displayed "certificate" was not executed by the required person under the statute. It was not issued by a notary public and the seal of the notary. It was not issued by an authorized agent of a licensed vehicle dealer. A licensed vehicle dealer is one licensed under N.D.C.C. ch. 39–22. A licensed vehicle dealer must maintain a place of business in North Dakota. N.D.C.C. § 39–22–15. Further, such a certificate is valid only "for a period of thirty days from the date of such application." The purported Montana certificate purported to be valid for more than thirty days, and the purported certificate reflected that it was more than thirty days past issuance. The application referenced in N.D.C.C. § 39–04–17 must be to the North Dakota Motor Vehicle Department under N.D.C.C. § 39–04–02.

### III

[¶ 32] In conclusion, the record does not establish a valid Montana temporary registration certificate; there appears to be no right to operate a motor vehicle in North Dakota under a temporary registration certificate from Montana; and no one—not the appellant, not the majority, and not the dissent—has cited contrary authority.

[¶ 33]   DALE V. SANDSTROM

CROTHERS, Justice, dissenting.

[¶ 34] I respectfully dissent.

[¶ 35] By upholding the stop in this case, the majority is saying the Fourth Amendment to the United States Constitution provides no protection to drivers of

vehicles bearing non-North Dakota temporary registrations. I cannot agree with that conclusion for the reasons stated by this Court in *State v. Oliver*, 2006 ND 241, ¶ 10, 724 N.W.2d 114, and *State v. Johnson*, 2006 ND 248, ¶¶ 8–12, 724 N.W.2d 129.

[¶ 36] Here, the arresting officer testified he decided to stop Mitchell's car as soon as he noticed the lack of front or rear license plates. The officer testified he stops all cars with temporary registrations.

[¶ 37] Setting aside that the officer was wrong in his belief he could lawfully stop all cars with North Dakota temporary registrations, *Johnson*, 2006 ND 248, ¶ 8, 724 N.W.2d 129, the majority opinion confirms the officer's assertion he can stop all other vehicles simply because they display temporary registrations. The majority opinion must be read that way because the officer testified that, before the stop, Mitchell's temporary registration was clearly visible in the car's rear window and that he observed that the registration was different than North Dakota's temporary registration.

[¶ 38] Given our holdings in *Oliver* and *Johnson*, it is significant that the registration was not a blank white sheet of paper, as is suggested by the majority. Majority Opinion at ¶ 18. Instead, the officer testified the registration had "10–10–2006" written in two-inch-high-bolded numbers across a standard-sized sheet of paper. The officer also testified that Mitchell's temporary registration appeared valid on its face and that he did not take further steps to confirm the validity either before or after the stop.

[¶ 39] I believe the officer's testimony reveals this stop was very much like that in *Johnson*, 2006 ND 248, 724 N.W.2d 129, and nothing like the stop in *Oliver*, 2006 ND 241, 724 N.W.2d 114.

[¶ 40] In *Johnson*, the officer "was parked on an approach facing the eastbound lanes of Interstate 94 in Fargo."

2006 ND 248, ¶ 2, 724 N.W.2d 129. The officer observed Johnson's vehicle as it passed and saw it lacked a front license plate. *Id.* The officer "drove onto the highway and caught up with Johnson's vehicle, noting the vehicle had no rear license plate." *Id.* The vehicle had a paper temporary registration sticker in the back window. *Id.* The officer testified it was difficult to see the temporary registration sticker at the normal distance between two vehicles, but nothing about the sticker appeared unusual. *Id.* The officer in *Johnson* "initiated a traffic stop solely to check the temporary sticker because of a belief [that] many people drive beyond the thirty days allowed by the temporary registration." *Id.*

[¶ 41] Here, the officer stopped Mitchell upon seeing no license plates. We determine the existence of reasonable articulable suspicion when the officer decides to stop and detain, and not at some later time after which the officer may have had the opportunity to gather additional information. *State v. Boyd*, 2002 ND 203, ¶ 15, 654 N.W.2d 392 ("To determine whether an officer has a reasonable and articulable suspicion, we examine the information known to the officer at the time of the stop. The reasonable-and-articulable-suspicion standard requires the officer justify the stop 'with more than just a vague "hunch" or other non-objective facts; and . . . the articulable facts must produce, by reasonable inference, a *reasonable* suspicion of unlawful conduct.' " (Citations omitted.)).

[¶ 42] The officer here had a hunch—which he admitted was not verified before or after the stop—that Mitchell's car was not properly registered, irrespective of the state of registration. The *Oliver* and *Johnson* decisions tell us this stop would have been unlawful if Mitchell had possessed a North Dakota temporary registration. By chance, Mitchell's temporary

registration was from Montana rather than in North Dakota. From this fact alone, the majority concludes the stop somehow complies with the Fourth Amendment protections against an unreasonable seizure. As a result, the majority allows police to stop many out-of-state travelers for no reason other than their vehicle registrations appear different. I am concerned that this is a dangerous precedent to set and that it erodes our holdings in *Oliver* and *Johnson.*

[¶ 43] On the undisputed facts of this case, I would conclude the officer did not have reasonable and articulable suspicion of unlawful conduct. Without it, the district court misapplied the law when holding this case is more like *Oliver* than *Johnson.* All evidence obtained as a result of the stop should have been suppressed, and I would reverse and remand to the district court for further proceedings.

[¶ 44] DANIEL J. CROTHERS