2011 ND 155

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Kyle Steven PEDERSON, Defendant and Appellant.**

Nos. 20100364, 20100365.

Supreme Court of North Dakota.

Aug. 18, 2011.

Haley L. Wamstad (appeared), Assistant State's Attorney, David Thomas Jones (on brief), Assistant State's Attorney, and Abby Siewart (argued), third-year law student, Grand Forks, N.D., for plaintiff and appellee.

Blake Dylan Hankey (argued), and Kelsy Gentzlow (appeared), third-year law student, Grand Forks, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Kyle Pederson appealed from a district court order denying his motion to suppress evidence, which we treat as an appeal from the subsequently entered criminal judgment. Pederson argues the district court erred in denying his motion because any evidence obtained after law officers unlawfully entered his motel room and arrested him must be suppressed under the fruit-of-the-poisonous-tree doctrine and any statements he made during the interrogation must be suppressed because he invoked his right to counsel. We affirm.

I

[¶ 2] Pederson became a suspect in multiple armed robberies in the Grand Forks area. On December 22, 2009, the district court issued a search warrant for Pederson's residence. Law officers began conducting surveillance on Pederson's house and followed Pederson when he left his home with a confidential informant. Pederson and the confidential informant went to a motel and reserved a room. Later that night the confidential informant left the motel room and met with law officers. The confidential informant told the officers that Pederson had been using a BB gun to commit the robberies but he was attempting to purchase a shotgun. The informant also said Pederson was becoming a little less stable and possibly more violent.

[¶ 3] The law officers decided to arrest Pederson based on the information the confidential informant provided. Four officers went to the motel room, carrying firearms and dressed in SWAT t-shirts and body armor. When the officers arrived at the motel room the door was approximately four inches ajar. One of the officers knocked on the door and the door opened approximately three-fourths of the way. The officers announced themselves and yelled "come out, show me your hands." Pederson started to come out of the bathroom, but ducked back in, and then came out with his hands up. All four officers had their weapons drawn and pointed at Pederson. One of the officers asked Pederson if they could enter and Pederson consented. After the officers entered the room, they ordered Pederson to lay on the floor and handcuffed him.

[¶ 4] Pederson was placed under arrest and taken to the police station for questioning. Pederson was informed he was under arrest and he was advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Pederson agreed to talk to the officers and signed a waiver of his rights before the interview began. On December 23, 2009, at approximately 12:30 a.m., three different officers began interviewing Pederson about the robberies. The interview was recorded. The officers questioned Pederson about the robberies and told him they thought he was involved. The officers questioned Pederson about what he told the confidential informant, and Pederson said:

A. Putting what togeth ... I mean, that's ... I didn't say nothin' to the guy. What did I say, what ... I don't know what to say, I mean ... you're gonna sit there and beat this up, I mean, I'm getting a lawyer then or something, I mean this, it ain't got nothin' to do with me. I'm fuckin' telling you guys, it's got nothin' to do with me, I ain't no fuckin', go through my record, look at me, I'm not a violent person, okay. I don't do that, I don't steal, I ain't, you know, I've

been living an honest, fuckin' life. I don't do nothin' but work. I've been, I've had a job steady since I was like 14 years old, you know. And I got into the dope and I've lost it all and here I am.

Q. Can I give you my theory on this?

A. Sure.

Q. Do you want to keep talking with us here?

A. Yeah, I mean... sure. I got nothin' to hide, I'm not lying about it.

Pederson continued to talk to the officers and he eventually confessed he was involved in the robberies.

[¶ 5] On December 23, 2009, Pederson was charged with one count of robbery. On January 6, 2010, Pederson was charged with five more counts of robbery, one count of possession of controlled substance, one count of possession of drug paraphernalia for use with oxycodone, and one count of possession of drug paraphernalia for use with marijuana.

[¶ 6] Pederson moved to suppress, arguing all evidence seized after he was arrested should be suppressed because he was illegally arrested at the motel without a warrant, and any statements he made during the interrogation should be suppressed because he invoked the right to an attorney. After a hearing, the district court denied Pederson's motion, ruling the officers lawfully entered the motel room because Pederson voluntarily consented to the entry. The court concluded the statements made during the interrogation should not be suppressed because Pederson did not unambiguously request an attorney. Pederson conditionally plead guilty on August 26, 2010, reserving the right to raise the suppression issues on appeal from the judgment of conviction.

II

[¶ 7] Pederson appealed from a district court order denying his motion to suppress evidence. An order denying a motion to suppress is not an appealable order under N.D.C.C. § 29–28–06. *State v. Decoteau,* 2004 ND 139, ¶ 7, 681 N.W.2d 803. However, we treat an attempted appeal as an appeal from the subsequently entered consistent judgment on which Pederson may raise the suppression issue. *Id.* We will treat this case as an appeal from the judgments entered on October 6, 2010.

[¶ 8] In reviewing a district court's decision on a motion to suppress, this Court will:

> defer to a [district] court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a [district] court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the [district] court's findings, and if its decision is not contrary to the manifest weight of the evidence.

*State v. Woinarowicz,* 2006 ND 179, ¶ 20, 720 N.W.2d 635 (quoting *State v. Linghor,* 2004 ND 224, ¶ 3, 690 N.W.2d 201); *City of Fargo v. Thompson,* 520 N.W.2d 578 (N.D.1994). Questions of law are fully reviewable on appeal. *Woinarowicz,* at ¶ 20. Whether findings of fact meet a legal standard is a question of law. *State v. Kitchen,* 1997 ND 241, ¶ 12, 572 N.W.2d 106.

III

[¶ 9] Pederson argues the district court erred in denying his motion to suppress evidence obtained after the officers entered his motel room. He contends his arrest was illegal because he did not volun-

tarily consent to the officers' entry into his motel room, and therefore all evidence obtained after the entry must be suppressed. Pederson does not contend there was any evidence obtained from the motel room that should have been suppressed.

[¶ 10] Unreasonable searches and seizures are prohibited by U.S. Const. amend. IV and N.D. Const. art. I, § 8. The Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest. *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Fourth Amendment protections also apply to temporary dwellings such as a motel room. *See Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *see also Woinarowicz*, 2006 ND 179, ¶¶ 21–23, 720 N.W.2d 635. A warrantless entry is unreasonable and prohibited by the Fourth Amendment unless it falls within one of the recognized exceptions to the warrant requirement. *Woinarowicz*, at ¶ 21. Voluntary consent is one exception, and whether an officer has consent is a question of fact. *Id.* To determine whether consent was freely and voluntarily given and not the product of coercion, a court must consider the totality of the circumstances, including the characteristics and condition of the accused at the time he consented and the details of the setting in which the consent was obtained. *City of Fargo v. Ellison*, 2001 ND 175, ¶ 13, 635 N.W.2d 151. "To be voluntary, the consent must not be coerced by explicit or implicit means or by implied threat or covert force." *State v. Avila*, 1997 ND 142, ¶ 16, 566 N.W.2d 410.

[¶ 11] The district court found the officers did not unlawfully enter Pederson's motel room, because Pederson consented to the entry. The court determined:

Since Mr. Pederson allowed entry, the police did not need a warrant. At that point in time, the Defendant waived his 4th Amendment right. The Defendant argues that since the police were armed, however, the waiver was not voluntary. There was sufficient credible evidence presented during hearing to indicate that the police had legitimate safety concerns as they approached Mr. Pederson's room. Considering the totality of the circumstances, the court determines that the preponderance of evidence establishes that Mr. Pederson voluntarily consented to law enforcement entering his motel room.

[¶ 12] However, there is insufficient evidence to support the district court's determination that Pederson voluntarily consented to the officers' entry. There was evidence there were four officers at the motel room door with their weapons drawn, they yelled and ordered the room occupants to come out with their hands up, Pederson came out of the bathroom with his hands up, and the officers asked if they could come into the room before ordering Pederson to the ground. Generally, courts have held consent is not voluntarily given when officers have their weapons drawn at the individual's door, unless there are other indications the consent was voluntary. *See United States v. McIntosh*, 857 F.2d 466, 467–68 (8th Cir.1988) (entry was not consensual when officers had weapons drawn when they demanded entry); *United States v. Newbern*, 731 F.2d 744, 748 (11th Cir.1984) (defendant did not voluntarily consent to entry, officers were standing outside motel room with weapons drawn); *United States v. Gillespie*, 650 F.2d 127, 128 (7th Cir.1981) (consent to enter was not freely and voluntarily given, when five officers with weapons in a "ready" position were at defendants' door and asked to enter to search for fugitives). Although the district court found there were legitimate safety concerns justifying

the officers' use of weapons, that fact is not relevant in deciding whether Pederson's consent was voluntary. To determine whether consent is voluntary the court must consider the totality of the circumstances, including the condition of the accused at the time he gave consent. *Ellison,* 2001 ND 175, ¶ 13, 635 N.W.2d 151. The officers' motivations for having their weapons drawn and pointed at Pederson were not known to Pederson when he gave consent to enter.

[¶ 13] Considering the totality of the circumstances, we conclude the district court's decision that Pederson voluntarily consented to the officers' entry into his motel room is contrary to the manifest weight of the evidence. The State did not argue the entry was justified by exigent circumstances or any other exception to the warrant requirement. *See State v. Huber,* 2011 ND 23, ¶ 12, 793 N.W.2d 781 (officers may enter a house to make an arrest without a warrant if exigent circumstances exist). We conclude the officers unlawfully entered the motel room and arrested Pederson.

[¶ 14] Pederson argues all evidence obtained after the unlawful entry, including the statements he made to the officers during the interrogation, must be suppressed as "fruit of the poisonous tree."

[¶ 15] When there is an absence of an exception to the warrant requirement " 'evidence obtained in violation of the Fourth Amendment's protections against unreasonable searches must be suppressed as inadmissible under the exclusionary rule.' " *Ellison,* 2001 ND 175, ¶ 12, 635 N.W.2d 151 (quoting *State v. Blumler,* 458 N.W.2d 300, 302 (N.D.1990)). " 'Any evidence *obtained as a result of* illegally acquired evidence must [also] be suppressed as "fruit of the poisonous tree" .... ' " *State v. Torkelsen,* 2008 ND 141, ¶ 23, 752 N.W.2d 640 (quoting *State v.*

*Gregg,* 2000 ND 154, ¶ 39, 615 N.W.2d 515).

[¶ 16] However, the exclusionary rule is not a "per se" or "but for" rule that makes inadmissible any evidence which somehow came to light through a chain of causation that began with an illegal arrest. *New York v. Harris,* 495 U.S. 14, 17, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). In *Harris,* the United States Supreme Court refused to suppress statements made at the police station after law officers made a warrantless and nonconsensual entry into the suspect's home to make a felony arrest. The Court held, "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton.*" *Id.* at 21, 110 S.Ct. 1640. The Court said the holding in *Payton,* that the Fourth Amendment prohibits police officers from making a warrantless and nonconsensual entry into a suspect's home to make a routine arrest, was based on an "overriding respect for the sanctity of the home." *Id.* at 17, 110 S.Ct. 1640. The Court said that reasoning does not "suggest[ ] that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house." *Id.* at 18, 110 S.Ct. 1640. Police are not required to release the suspect so he can be re-arrested after he leaves the house, and a suspect cannot claim he is immune from prosecution because his person was the fruit of an illegal arrest. *Id.* Because the officers had probable cause to arrest the suspect, he is not unlawfully in custody when he is removed to the police station. *Id. Harris* said the legal issues would be the same if police arrested the suspect outside his house, illegally entered

the house to search for evidence, and later interrogated the suspect at the police station. *Id.* The Court held any statements made after the arrest and outside of the home are "not the product of being in unlawful custody. Neither [are they] the fruit of having been arrested in the home rather than someplace else." *Id.* at 19, 110 S.Ct. 1640. The Court further held that suppressing the statements would not serve the purpose of the rule that made in-house arrests illegal:

> The warrant requirement for an arrest in the home is imposed to protect the home, and anything incriminating the police gathered from arresting Harris in his home, rather than elsewhere, has been excluded, as it should have been; the purpose of the rule has thereby been vindicated. We are not required by the Constitution to go further and suppress statements later made by Harris in order to deter police from violating *Payton.* "As cases considering the use of unlawfully obtained evidence in criminal trials themselves make clear, it does not follow from the emphasis on the exclusionary rule's deterrent value that 'anything which deters illegal searches is thereby commanded by the Fourth Amendment.'" Even though we decline to suppress statements made outside the home following a *Payton* violation, the principal incentive to obey *Payton* still obtains: the police know that a warrantless entry will lead to the suppression of any evidence found, or statements taken, inside the home.

*Harris,* at 20, 110 S.Ct. 1640 (citation omitted).

[¶ 17] Applying the *Harris* rationale in this case, Pederson's statements made at the police station cannot be considered the product of an unlawful entry into the motel room and the "fruit of the poisonous tree." The district court found there was probable cause to arrest Pederson before the officers went to the motel room based on the totality of the circumstances, which included that a probable cause search warrant had been issued for Pederson's home in conjunction with the robberies and that the confidential informant advised the officers Pederson had admitted his involvement in the robberies and had possession of or was attempting to purchase a shotgun.[1] Pederson did not contest these findings on appeal. Because there was probable cause to arrest Pederson, the statements Pederson made during the interrogation at the police station were not the product of the illegal entry and the exclusionary rule does not bar the State's use of those statements. The district court did not err in denying Pederson's motion to suppress.

IV

[¶ 18] Pederson argues the district court erred as a matter of law by finding he voluntarily waived his *Miranda* rights during the interrogation. He contends he invoked his right to counsel during the interrogation and all statements made after he invoked his right should have been suppressed.

[¶ 19] Under *Miranda,* 384 U.S. at 471–73, 86 S.Ct. 1602, a suspect subject to custodial interrogation has the right to speak with an attorney and have an attorney present during questioning. If a suspect requests counsel at any time during the interview, the interview must stop until an attorney has been made available or the suspect reinitiates conversa-

---

1. The district court made a finding that there was probable cause to arrest Pederson in the hotel room. No evidence was found in the hotel room to give the officers probable cause to arrest.

tion. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). However, the suspect must unambiguously invoke his right to counsel to stop the interrogation, and if the suspect makes a statement concerning the right to counsel that is ambiguous or equivocal, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his right to counsel. *Davis v. United States*, 512 U.S. 452, 459–62, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *see also State v. Greybull*, 1998 ND 102, ¶ 16, 579 N.W.2d 161. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Davis*, at 459, 114 S.Ct. 2350. "[The suspect] must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.*

▆▆▆ [¶ 20] The district court found Pederson did not unambiguously invoke his *Miranda* rights during the police interrogation. During the interrogation, Pederson said, "I'm getting a lawyer then or something," but he completed his response to the officer's question and indicated he wished to continue speaking with police. Pederson did not unambiguously invoke the right to counsel. *See Greybull*, 1998 ND 102, ¶ 18, 579 N.W.2d 161 (suspect's repeated comments "You can't make me say nothing" and "Do I need to get a lawyer?" did not unequivocally invoke her right to counsel or silence). Furthermore, the officers asked Pederson if he wanted to continue talking to them and he said, "Yeah, I mean... sure. I got nothin' to hide, I'm not lying about it." Although the

officers were not required to ask Pederson to clarify whether he wanted to invoke his right to counsel, the officers asked Pederson if he wanted to continue talking to them and he indicated that he did. The evidence supports the court's findings, and the court did not err in denying Pederson's motion to suppress his statements.

V

[¶ 21] We affirm, concluding, for the reasons stated above, that the district court did not err in denying Pederson's motion to suppress.

[¶ 22] DALE V. SANDSTROM, and DANIEL J. CROTHERS, concur.

MARING, Justice, concurring in the result.

[¶ 23] I concur in the majority's analysis and conclusion that Pederson did not voluntarily consent to the officers' entry into his motel room. The majority further concludes, under *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), " 'the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton*.' " Majority opinion, at ¶ 16 (quoting *Harris*, 495 U.S. at 21, 110 S.Ct. 1640). I do not disagree with this conclusion either. My concern is the majority's analysis regarding the evidence constituting probable cause which renders the *Harris* exception applicable. The United States Supreme Court in *New York v. Harris*, made it clear that in order for the exclusionary rule not to bar the State's use of such a statement, the police must have probable cause to arrest the suspect for committing a crime before the officers enter the home. *Id.* at 18, 110 S.Ct. 1640. It is this question of law and the answer that distinguishes the analysis in the present case from the use of the "attenuation

analysis" in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). *Harris*, 495 U.S. at 18–19, 110 S.Ct. 1640; *see also Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

[¶ 24] Our Court has applied the "attenuation analysis" in a number of cases to determine whether the evidence resulting from an illegal search or arrest should be suppressed as fruit of the poisonous tree. *See State v. Torkelsen*, 2008 ND 141, ¶ 24, 752 N.W.2d 640; *State v. Gregg*, 2000 ND 154, ¶ 41, 615 N.W.2d 515; *State v. Smith*, 2005 ND 21, ¶ 26, 691 N.W.2d 203.

[¶ 25] In the present case, the trial court held that the officers' entry into the motel room was consented to by Pederson and, therefore, there was no unconstitutional entry or search. The trial court did not analyze the facts of the case under the view that the officers' entry was unlawful and unconstitutional under *New York v. Harris*. The trial court did make a finding in its memorandum decision denying the motion to suppress that "[b]ased upon the totality of the circumstances ... probable cause existed to arrest Mr. Pederson in the motel room." This finding never appears in the trial court's order denying the motion to suppress; supposedly, because it was not the focus of the trial court's analysis of voluntary consent. I am, therefore, concerned the trial court did not adequately require the establishment of the reliability of the informants. The majority opinion's conclusion as a matter of law that the facts found by the trial court in its memorandum decision amount to probable cause to arrest, is the deciding answer to the question whether the *Harris* exception to the exclusionary rule applies. Yet, in paragraph 17 of the majority opinion, I do not find our usual analysis on appeal of

whether probable cause existed. *See State v. Frye*, 245 N.W.2d 878, 881 (N.D.1976) (holding "[a]lthough the present case involves a warrantless arrest, the Fourth Amendment demands that requirements of reliability of informants and particularity of information be at least as stringent as where an arrest warrant is obtained"); *State v. Kitchen*, 1997 ND 241, ¶¶ 11–12, 572 N.W.2d 106 (holding we defer to a trial court's findings of fact in the disposition of a motion to suppress, but whether findings of fact meet a legal standard, is a question of law which is fully reviewable).

[¶ 26] If I assume there was a proper finding of fact to support probable cause to arrest and *New York v. Harris* is applicable on the record developed in this case, I must agree Pederson's claim that his Fourth Amendment rights under the United States Constitution have been violated fails. Our Court is bound by the federal precedent when interpreting the United States Constitution. *State v. Dodson*, 2003 ND 187, ¶ 23, 671 N.W.2d 825. Pederson, however, also claims that his right to be free of unreasonable searches and seizures under the North Dakota Constitution, Article I, Section 8, has been violated. Pederson does not provide any analysis, including any case law or other legal authorities to establish why Article I, Section 8 of the North Dakota Constitution should provide greater protection than the Fourth Amendment of the United States Constitution. Our Court has said "[a] party must do more than submit bare assertions to adequately raise constitutional issues." *Riemers v. O'Halloran*, 2004 ND 79, ¶ 6, 678 N.W.2d 547. "We have also said 'a party making a constitutional claim must provide persuasive authority and reasoning.'" *Kautzman v. Kautzman*, 2003 ND 140, ¶ 15, 668 N.W.2d 59 (citation omitted). Pederson has not done this.

[¶ 27] It must be noted, however, that our Court has stated that we may provide

the citizens of our State, as a matter of state constitutional law, greater protection in interpreting Article I, Section 8 of the North Dakota Constitution than the safeguards guaranteed in the United States Constitution. *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988); *State v. Stockert*, 245 N.W.2d 266, 271 (N.D.1976); *State v. Herrick*, 1999 ND 1, ¶ 39, 588 N.W.2d 847 (Maring, J., dissenting). Other jurisdictions have rejected the *Harris* exception to the exclusionary rule under their State constitutions. *See State v. Eserjose*, 171 Wash.2d 907, —— P.3d —— (2011) (holding the *Harris* exception is incompatible with the exclusionary rule under the Washington Constitution); *State v. Mariano*, 114 Hawai'i 271, 160 P.3d 1258, 1268 (Hawai'i Ct.App.2007) (holding "[w]e cannot condone the parsimonious Fourth Amendment protection the Supreme Court doled out in *Harris* "); *People v. Harris*, 77 N.Y.2d 434, 568 N.Y.S.2d 702, 570 N.E.2d 1051 (N.Y.Ct.App.1991) (holding the *Harris* rule does not protect New York citizens under the New York Constitution); *State v. Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992) (holding the *Harris* rationale falls short of the protection required under the Connecticut Constitution). *But see State v. Canez*, 202 Ariz. 133, 42 P.3d 564, 583 (2002) (adopting the *Harris* exception).

[¶ 28]   I am of the opinion that whether *Harris* is compatible with Article I, Section 8 of the North Dakota Constitution is an important question of state constitutional law not yet addressed by our Court.

[¶ 29]   I respectfully concur in the result.

[¶ 30] CAROL RONNING KAPSNER, concurs.