2014 ND 180

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Arthur Bruce Lanakila OSTBY, Jr., Defendant and Appellant.**

No. 20130411.

Supreme Court of North Dakota.

Sept. 23, 2014.

Gary E. Euren, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Laura L. Reynolds, Fargo Public Defender Office, Fargo, N.D., for defendant and appellant.

McEVERS, Justice.

[¶ 1] Arthur Bruce Lanakila Ostby, Jr., appeals from a criminal judgment entered on a jury verdict finding him guilty of possession of methamphetamine with intent to deliver and possession of drug paraphernalia. We conclude the district court did not err in denying Ostby's suppression motion, Ostby's due process rights were not violated by the State's failure to preserve evidence, and the evidence is sufficient to sustain the conviction. We affirm.

I

[¶ 2] On October 13, 2010, Fargo law enforcement officers conducted a controlled drug buy in which they had a confidential informant arrange to buy methamphetamine from M.B., an unwitting go-between. A detective and the informant picked M.B. up and drove to a convenience store where M.B. had arranged to meet a person who would provide her with the methamphetamine. M.B. was given $500 for the purchase and she got out of the vehicle and walked around the building where other officers on the scene saw her enter a black Nissan. M.B. returned to the detective's vehicle with the methamphetamine about seven minutes later. Another officer at the scene radioed his observations to other officers in the surveillance team and described the black Nissan.

[¶ 3] A police sergeant, who was accompanied by another officer, followed the black Nissan. When the sergeant observed the black Nissan veer over a solid white line as it entered onto the eastbound ramp leading to Interstate 94, he initiated a traffic stop. The officers learned that the driver, Ostby, had a suspended license and several outstanding warrants for his arrest. Ostby was handcuffed and placed under arrest, and a search of his person revealed methamphetamine and a glass pipe. Ostby received permission to smoke a cigarette, and he asked one of the officers to retrieve a lighter from the center console between the front seats of the black Nissan. The officer found a baggie of methamphetamine on top of the lighter in the console. Officers then searched the vehicle and found multiple plastic baggies, two digital scales, and three bags of methamphetamine. The officers took into custody the items from the vehicle they believed to be pertinent to the case, photographed other items, and left the remainder of the items in the vehicle. Items not taken into evidence included blankets, jackets, a helmet, fishing poles and letters addressed to Ostby. No cash was found. The vehicle was impounded, but an impound inventory was not performed in violation of police department policy. The vehicle, which was not registered in Ostby's name, was sold at auction along with the items remaining in the vehicle after no one claimed them.

[¶ 4] Ostby was charged with class A felony possession of methamphetamine with intent to deliver in violation of N.D.C.C. § 19–03.1–23(1) and class C felony possession of drug paraphernalia in violation of N.D.C.C. § 19–03.4–03. Ostby moved in limine to suppress evidence, claiming the traffic stop was pretextual and there was no reasonable and articulable suspicion to validate the stop. The district court denied the motion. During the trial, Ostby's attorney questioned officers about their failure to preserve evidence and requested an adverse-inference instruction based on NDJI–Civil C–80.30 (2001), which the court gave to the jury.

The jury found Ostby guilty of both charges.

## II

[¶ 5] Ostby argues the district court erred in denying his motion in limine to suppress the evidence because it was the fruit of a "pretextual traffic stop" and the officers had no reasonable and articulable suspicion that he had violated the law. The State claims Ostby cannot raise this issue because he appealed only from the criminal judgment and did not appeal from the order denying the suppression motion. However, an order denying a suppression motion under N.D.C.C. § 29–28–06 is not appealable in itself, but is reviewable in an appeal from the subsequently entered criminal judgment. *See, e.g., State v. Pederson*, 2011 ND 155, ¶ 7, 801 N.W.2d 723, *State v. Decoteau*, 2004 ND 139, ¶ 7, 681 N.W.2d 803; *State v. Klodt*, 298 N.W.2d 783 n. 1 (N.D.1980).

[¶ 6] Our standard for reviewing a district court's decision on a motion to suppress evidence is well established:

In reviewing a district court decision on a motion to suppress, we give deference to the district court's findings of fact and we resolve conflicts in testimony in favor of affirmance. *State v. Tognotti*, 2003 ND 99, ¶ 5, 663 N.W.2d 642. We "will not reverse a district court decision on a motion to suppress ... if there is sufficient competent evidence capable of supporting the court's findings, and if the decision is not contrary to the manifest weight of the evidence." *State v. Gefroh*, 2011 ND 153, ¶ 7, 801 N.W.2d 429. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. *Id.*

*State v. Reis*, 2014 ND 30, ¶ 8, 842 N.W.2d 845. Whether facts support a reasonable and articulable suspicion is a question of law fully reviewable on appeal. *See, e.g., State v. Wolfer*, 2010 ND 63, ¶ 5, 780 N.W.2d 650; *State v. Gregg*, 2000 ND 154, ¶ 20, 615 N.W.2d 515.

[¶ 7] In this case, the district court ruled the traffic stop was legal based on the sergeant's observation of Ostby crossing over the solid white line on the road in violation of N.D.C.C. § 39–10–17(1). The court further ruled the traffic stop was legal because the sergeant "had a reasonable and articulable suspicion of criminal activity based upon law enforcement's observations at the controlled drug buy." Ostby argues the stop was illegal because the sergeant "did not describe any safety issues" associated with "going over a solid white line," and the stop was "pretextual" because the officers suspected the person driving the black Nissan was involved in the controlled drug buy.

[¶ 8] Law enforcement officers may legally stop a moving vehicle for investigation if the officers have reasonable and articulable suspicion the driver has violated or is violating the law. *See, e.g., Bartch v. North Dakota Dep't of Transp.*, 2007 ND 201, ¶ 7, 743 N.W.2d 109; *Zimmerman v. North Dakota Dep't of Transp. Dir.*, 543 N.W.2d 479, 481 (N.D.1996). Ostby's argument about the pretextual nature of the traffic stop is misplaced because the United States Supreme Court has made it clear that its "cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Therefore, this Court has often said that traffic violations, even if pretextual, provide a lawful basis to conduct an investigatory vehicle stop, and evidence discovered during those stops is admissible. *See, e.g., State v. Oliver*, 2006 ND

241, ¶ 6, 724 N.W.2d 114; *State v. Bartelson*, 2005 ND 172, ¶ 8, 704 N.W.2d 824; *State v. Higgins*, 2004 ND 115, ¶ 11, 680 N.W.2d 645; *State v. Loh*, 2000 ND 188, ¶ 10, 618 N.W.2d 477; *Wheeling v. Director of N.D. Dep't of Transp.*, 1997 ND 193, ¶ 9, 569 N.W.2d 273. The severity of an observed traffic violation is of no consequence:

> "It is well settled, traffic violations, even if considered common or minor, constitute prohibited conduct which provide officers with requisite suspicion for conducting investigatory stops," *Hanson v. ND Dep't of Transp.*, 2003 ND 175, ¶ 15, 671 N.W.2d 780, but an officer is not required to "observe a motorist violat[e] a traffic law or . . . rule out every potential innocent excuse" before initiating a traffic stop to investigate. *State v. Mohl*, 2010 ND 120, ¶ 7, 784 N.W.2d 128. There may be circumstances when conduct, even though completely lawful, "might justify the suspicion" that criminal activity is underway. *Kappel v. ND Dep't of Transp.*, 1999 ND 213, ¶ 10, 602 N.W.2d 718.

*Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 9, 839 N.W.2d 851.

[¶ 9] The practicable lane statute provides "[a] vehicle must be driven as nearly as practicable entirely within a single lane and may not be moved from such lane until the driver has first ascertained that such movement can be made with safety." N.D.C.C. § 39–10–17(1). We have upheld traffic stops based on violations of the practicable lane statute in the past. *See Wolfer*, 2010 ND 63, ¶¶ 6–8, 780 N.W.2d 650; *State v. Burris*, 545 N.W.2d 192, 193–94 (N.D.1996). The parties in this case agreed that the suppression motion would be submitted to the district court under N.D.R.Ct. 3.2, and no hearing on the motion was held. One of the exhibits submitted to the court was a Fargo Police Department report, in which the sergeant who initiated the stop stated he:

> was southbound on University Drive approaching I94. There was a black Nissan in front of me with ND plate HVP596. The vehicle was in the right lane for southbound traffic on South University Drive. As the vehicle went underneath the Interstate, it stayed in that lane and at the last possible second, the vehicle veered over the solid white line to get onto I94 eastbound on-ramp. The driver did turn his turn signal on right as he was crossing over the solid white line.

> I turned to get behind the vehicle and stopped the vehicle on I94, right east of the University Drive overpass.

[¶ 10] Most of Ostby's argument about the alleged invalidity of the traffic stop centers on his assertion that it was "pretextual." But, as we have explained, whether the stop was pretextual is irrelevant. Although Ostby relies on the sergeant's failure to "describe any safety issues" involved with his crossing the solid white line, in *Wolfer*, 2010 ND 63, ¶ 7, 780 N.W.2d 650, we addressed a similar argument that not every touching or crossing a fog line constitutes a violation of the practicable lane statute.

> The officer's testimony and the video recording of the stop established Wolfer's right tires drove outside the marked lane of traffic on a dry and obstruction-free roadway. While the braking vehicles, curving road and parked police vehicle are facts that go towards the practicability of staying entirely within a single lane, the validity of the investigatory stop turned on the officer's reasonable suspicion a law had been broken, not on "whether the grounds for the stop [would] ultimately result in conviction." *State v. Smith*, 452 N.W.2d 86, 88 (N.D.1990).

Likewise, the evidence in this case supports the district court's conclusion that the sergeant had a reasonable and articulable suspicion Ostby had violated the practicable lane statute by crossing the solid white line.

[¶ 11] Because the stop was valid based on Ostby's suspected violation of the practicable lane statute, we do not address the district court's alternative ground that "law enforcement's observations at the controlled drug buy" supported the stop of the vehicle. We conclude the court did not err in denying Ostby's motion in limine to suppress evidence.

### III

[¶ 12] Ostby argues the State violated his due process rights by failing to preserve evidence that was "material" and "exculpatory" and allowing the evidence to be destroyed.

[¶ 13] The record reflects law enforcement officers seized items from the black Nissan that they believed were relevant to the case, photographed other items, and simply left the remaining items in the vehicle. A scale and baggies were found in a backpack along with a different person's identification card. Police left the identification card in the vehicle but took photographs of the identification card and the backpack and its contents. The vehicle was impounded, but was not inventoried in violation of police department policy and the vehicle and its remaining contents were eventually sold at auction. Law enforcement officers explained that this was a mistake caused by the absence of a computer to obtain the proper inventory forms in the unmarked vehicle they were using and another officer forgetting to conduct an inventory upon his return to the police department. Ostby was provided the photographs through discovery, including the photo of the identification card.

[¶ 14] There are three categories of cases in which an accused's right to due process may be violated by the State's failure to provide evidence to the defense: " '(1) the [S]tate's failure to *collect* evidence in the first instance, (2) the [S]tate's failure to *preserve* evidence once it has been collected, and (3) the [S]tate's *suppression* of evidence which has been collected and preserved.' " *State v. Schmidt,* 2012 ND 120, ¶ 12, 817 N.W.2d 332 (quoting *State v. Steffes,* 500 N.W.2d 608, 612 (N.D.1993)). Ostby asserts "[t]his case is an unconstitutional failure by the State to preserve evidence that had been collected" under the second category, and we will treat the conduct of the law enforcement officers as falling within this category for purposes of argument.

[¶ 15] Unless a criminal defendant shows bad faith on the part of law enforcement, failure to preserve potentially useful evidence does not violate the defendant's due process rights. *See, e.g., State v. Haibeck,* 2006 ND 100, ¶ 7, 714 N.W.2d 52. Whether a law enforcement officer's "action could be termed reckless, intentional, negligent, or merely that of following or failing to follow regular police procedure, ... the evidentiary standard necessary to prove bad faith by the state with regard to the destruction or loss of evidence is quite high." *Steffes,* at 613–14. "Bad faith, as used in cases involving destroyed evidence or statements, means that the state deliberately destroyed the evidence with the intent to deprive the defense of information; that is, that the evidence was destroyed by, or at the direction of, a state agent who intended to thwart the defense." *Id.* at 613.

[¶ 16] Ostby has not shown that any of the unpreserved evidence was "material" or "exculpatory," as he asserts. Although he focuses on the loss of the identification

card, Ostby was supplied with the photograph of the card and he does not claim the photograph failed to capture any pertinent information. During the trial, Ostby questioned law enforcement officers at length about their handling of the evidence. The evidence elicited simply does not rise to the high level required to establish bad faith and a violation of Ostby's due process rights.

[¶ 17] Moreover, this Court has indicated that in situations where bad faith has not been established, an adverse-inference instruction might be appropriate. *See, e.g., Schmidt,* 2012 ND 120, ¶ 31, 817 N.W.2d 332; *Haibeck,* 2006 ND 100, ¶ 8, 714 N.W.2d 52; *State v. Barnett,* 543 N.W.2d 774, 778 (N.D.1996); *Steffes,* 500 N.W.2d at 611 n. 3. Ostby requested an adverse-inference instruction based on NDJI–Civil C–80.30 (2001), which the district court gave to the jury. The instruction stated:

*FAILURE TO PRODUCE EVIDENCE*

If a Party has failed to offer evidence under control of the Party and (1) the evidence would be available to that Party by the exercise of reasonable diligence, (2) the evidence was not equally available to the adverse Party, (3) a reasonably prudent person under the same or similar circumstances who had reason to believe the evidence to be favorable, would have offered the evidence, and (4) no reasonable explanation for the failure is given, you may infer that the evidence would have been unfavorable to that Party.

[¶ 18] We conclude Ostby's due process rights were not violated in this case.

IV

[¶ 19] Ostby argues the evidence was insufficient to sustain the conviction for possession of methamphetamine with intent to deliver.

[¶ 20] In *State v. Coppage,* 2008 ND 134, ¶ 24, 751 N.W.2d 254, this Court explained:

"When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *State v. Schmeets,* 2007 ND 197, ¶ 8, 742 N.W.2d 513. "The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict." *Id.* "A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor." *Id.*

[¶ 21] There is evidence that law enforcement officers discovered a substantial amount of methamphetamine, as well as drug paraphernalia, on Ostby's person and inside the vehicle in which he was the sole occupant. Viewing the evidence in the light most favorable to the State, we conclude a rational factfinder could have found beyond a reasonable doubt that Ostby was guilty of possession of methamphetamine with intent to deliver.

V

[¶ 22] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. The criminal judgment is affirmed.

[¶ 23]   GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.